Benjamin D. LUCAS et ux., Appellants,

v.

Charles R. ALSMEYER, Appellee.

No. 13425.

Court of Civil Appeals of Texas.

San Antonio.

March 4, 1959.

G. Woodson Morris, San Antonio, for appellants.

House, Mercer & House, James D. Cunningham, San Antonio, for appellee.

MURRAY, Chief Justice.

This suit was instituted by Benjamin D. Lucas and wife, Valita Lucas, against Charles R. Alsmeyer, seeking to recover damages for personal injuries and property damages sustained in a four-car collision on Broadway in the City of Alamo Heights, Bexar County, Texas. The four cars involved were traveling in a southerly direction on Broadway, near the intersection of Joliet Avenue, in the following order: The Lucas car was first, the car driven by Carl Jennings was second, another driven by Walter G. Lagerquist was third, and the fourth car was driven by the defendant, Charles R. Alsmeyer. The trial was to a jury and resulted in judgment that plaintiffs take nothing against the defendant, from which judgment Benjamin D. Lucas and his wife have prosecuted this appeal.

Appellants' first point is as follows:

"The Court erred in not allowing plaintiffs to introduce in evidence, by and through Mr. Walter G. Lagerquist, an attorney, who was also involved in the accident in question out of which this action arose, the fact that the defendant had paid him $550.00 for damages of every character that he had received therein and also a copy of an instrument evidencing such fact executed by him in favor of the defendant, and which was designated as 'Covenant Not to Sue'."

■■ The trial judge was informed, out of the presence of the jury, that appellants expected to call Mr. Lagerquist as a witness and prove by him that a car driven by him was also involved in this collision, and that he had received the sum of $550.00 from appellee, Alsmeyer, and had executed an agreement not to sue Alsmeyer in consideration of said sum of $550.00. Lagerquist's agreement not to sue was also to be offered in evidence. The appellants were informed by the trial court that such testimony would not be admitted in evidence, and that no questions concerning same should be asked in the presence of the jury, to which action of the court the appellants excepted. The so-called "Covenant Not to Sue" was never tendered in evidence, nor are its contents shown in the statement of facts or in a proper bill of exception. Neither does the record show what the testimony of Mr. Lagerquist would have been had he been put on the stand and questioned concerning the agreement not to sue. Under the present state of the record, appellants' point one presents nothing for the consideration of this Court. It was the duty of appellants to either have the statement of facts show these matters or have them presented in a bill of exception approved by the trial judge. The contents of the agreement not to sue could be very important in considering the point here raised. The instrument may have shown upon its face that Alsmeyer was merely purchasing his peace and not paying Lagerquist his damages. It is the duty of a party complaining of the exclusion of evidence to show what that evidence was, by offering it in evidence out of the hearing of the jury, and having the statement of facts show the court's ruling thereon, or to show such matters in a bill of exception duly approved by the trial judge. We overrule appellants' first point of error. Garcia v. Lacey, Tex. Civ.App., 316 S.W.2d 183.

The trial court, among other things, charged the jury as follows:

"I especially remind and instruct you that this suit is between the individual parties before you, to-wit, Benjamin D. Lucas and wife, Valita Lucas, as Plaintiffs, and Charles R. Alsmeyer, as the Defendant, and none other than said abovenamed parties. There is no evidence before you as to whether either party to this suit has or had liability or any other kind of insurance; nor is this a matter within your province as jurors to consider one way or

the other, and on this you must not guess or speculate, nor discuss, mention or consider. It is, therefore, imperative that at all times during this trial and during your deliberations on your verdict that you bear in mind that the abovenamed plaintiffs and Defendant are the only parties to this suit, and you must not mention, discuss, or consider, by mental reservation or otherwise, whether either party to this suit is covered by insurance of any kind whatsoever, and in awarding damages, if any, you must not consider that any amount, if any, so awarded will be adjudged against anyone except the defendant, Charles Alsmeyer."

In connection with this charge the court, out of the hearing of the jury, made the following statement to the parties in the suit:

"You know this question of liability insurance is becoming a very serious problem in these automobile collision cases. Just about three weeks ago down in Judge Gerhardt's court while they were examining the panel on voir dire one juror spoke up and asked whether or not the defendant had liability insurance, and the Court had to discharge the panel and start over again. Last week the same thing happened in Judge William's court, so I am told. And in this case I am in somewhat of an embarrassing dilemma. I have been so proud of the way we are going along. Both of you, counsel on both sides in this case, have been very careful to keep error out of the case; I feel like it has been clear up to a certain point. Yesterday after the Plaintiff rested we called a little recess. I went down to get a cup of coffee and three of the jurors were there drinking coffee—Mr. Liberto, Mr. Dwight, and Mr. Spruell—and they spoke to me. And I asked Mr. Liberto whether he is a brother of Sam Liberto and Enrico Liberto, both of whom are good friends of mine. He said, 'Yes.

They are my brothers.' Mr. Dwight spoke up and said, 'Judge, can't this boy's liability insurance company help him out of this some way or other?' I said, 'I don't know a thing about that, and you shouldn't consider—that is not a matter for you to consider, you shouldn't say anything about insurance.' That is all that I felt I could say and that is all I did say. And he apologized and said, 'Oh, I didn't know that. I am sorry.' Now, it has been my observation over a good many years that juries not only are willing to follow the Court's instructions in any case they try, but they are anxious to do it. And I have often thought that they should be instructed in the Court's charge not to consider whether either party had liability insurance. In fact, three years ago in a Judges' Conference I got into a discussion with several judges, an informal discussion, about that very matter. And I contended at that time that a judge should be permitted to instruct a jury in writing, just like they do in criminal cases where they are instructed that they are not to consider, refer to, or allude to the fact that the defendant didn't take the witness stand in his own behalf; if they do in a juryroom that is error. They won't do it if they are instructed not to do it. I think we have the same situation in this. This is getting to be a serious situation. But we are having too many mistrials as a result of the jurors inquiring about that. I can see how that —why that happens, because everybody thinks we have a compulsory liability insurance law, and whenever an automobile accident occurs that is the first thing that pops into the minds of all parties involved, as well as spectators: whether he is covered by insurance. And whenever a panel of jurors come into the courtroom and they are apprised of the fact that it is an automobile collision case that is the first thing that comes into their minds. It is in

the mind of all people. It is in the mind of the juries when they know they are going to try such a case. A few of them have the temerity to ask the question. That has happened not only the last two times I have just referred to, but I know of cases some-time back where the same thing hap-pened. I mention this because I don't want to declare a mistrial in this case. I told you a while ago I was discussing this with some of the judges at the Judges' Conference in Corpus Christi three years ago. One of them was an appellate judge; I won't mention his name because I don't want to put an appellate judge in the position of hav-ing committed himself. But this par-ticular judge was one that said that he thinks that should be done. He said it has never come before the courts because no judge has ever submitted it, has ever instructed a jury like that. And all the judges were of the opinion that it is just foolish not to instruct them, because it is natural for jurors to ask that question and discuss it in the jury room. But if they are in-structed not to do it, I find that they will try to follow the court's instruc-tions. So, with that in mind, I came down here this morning and wrote what I think are the proper instruc-tions, and I am going to read it to you fellows and see whether you can— I know you may not agree with me in doing it at all; I know the defend-ant's attorneys will probably object to any such a charge, but I want to show you what I have written and if you can improve on it without committing yourselves to anything, without waiv-ing any objections you want to make to it. I am going to read it to you now."

■ After the court made the above statement to the parties neither side moved for a mistrial and the entire matter of the trial judge's conversation with the three jurors was thereby waived, and neither party is now in a position to contend that such conversation was reversible error.

■ The charge given by the court to the jury, as above set out, directing them not to consider the fact that either party to the suit might have liability insurance, was a proper charge and it was timely given by the trial court, in view of the fact that one of the jurors had already raised the question of liability insurance.

■ At the close of the evidence appel-lants made a motion for an instructed ver-dict in their favor upon the alleged acts of negligence, and that only the question of the amount of damages be submitted to the jury. After the jury had rendered their verdict in favor of appellee, appellants made a motion for judgment notwithstand-ing the verdict. The court overruled both of these motions, and its action in doing so is assigned as error. The evidence was in conflict as to whether or not Alsmeyer was guilty of the acts of negligence alleged, and it would have been improper in the face of such conflicting evidence for the court to have granted the motion for an instructed verdict and for judgment non obstante veredicto. It was the theory of appellants that while all four cars were proceeding in a southerly direction on Broadway, the Lucas car stopped for a traffic light, that the Jennings car also stopped for the light, and the Lagerquist car did likewise, but the Alsmeyer car failed to stop and struck the rear of the Lagerquist car, forcing it into the Jennings car, and forcing the Jennings car into the Lucas car. The theory of appellee is, that when the Lucas car stopped at the traffic light, the Jennings car crashed into the Lucas car and thus caused the dam-age, if any, suffered by appellants. The theory of the appellee was supported by a disinterested witness Bottomfield, who testified that the Jennings car struck the Lucas car before the other cars collided. The testimony of this witness alone was sufficient to raise questions of fact which were properly submitted to the jury, and the

court did not err in overruling appellants' motion for an instructed verdict or their motion for judgment non obstante veredicto. Appellants' remaining points of error are without merit and are overruled.

The judgment of the trial court is affirmed.