Affirmed and Memorandum Opinion filed May 31, 2007








Affirmed
and Memorandum Opinion filed May 31, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00081-CV

____________

 

PAUL ZAVALA, Appellant

 

V.

 

EVELYN ZAVALA, Appellee

 



 

On Appeal from the 246th
District Court

Harris County, Texas

Trial Court Cause No. 2004-66150

 



 

M E M O R A N D U M   O P I N I O N

This is an appeal from a final decree of divorce awarding
the equity in the couple=s marital home to appellee, Evelyn
Zavala.  The trial court based its award on the parties= stipulation, and
appellant Paul Zavala contends the award is erroneous because his trial
attorney lacked authority to consent to the division of the equity.  We affirm.








I.  Factual and Procedural Background

Paul Zavala filed a suit for divorce from his wife Evelyn
Zavala.  Evelyn answered and filed a counter-petition. When the case was called
for trial, the trial court heard preliminary stipulations from the parties= attorneys
regarding the division of the assets of the marital estate.  The transcript
reflects the following exchange that is pertinent to this appeal:

Court:                    And if we
have any preliminary stipulation[s], gentlemen.

Evelyn=s attorney:   We do, Your Honor.

Paul=s attorney:      We do, Judge.

Evelyn=s attorney:   May I?

Court:                    Mr.
Baughman.

Evelyn=s attorney:   We have agreed on the
division of the property.  House will be awarded to the wife, 100 percent,
subject to the debt.  She is to take her retirement up to $9,500.  Anything
over $9,500 will be split 50/50 between the parties.  He is to be awarded, he
being Mr. Zavala, first $34,000 in his retirement plan and anything over
$34,000 will be split 50/50. He represents that he has approximately $60,000
and is not participating in the drop program.

Wife will be awarded the Ford F‑150 pickup truck and
the    Harley Davidson motorcycle subject to the debt.  Husband is      awarded
the 87 pickup truck and the ‑ ‑ can I call my client?

Court:                     Sure. 
Bring your clients up.

Evelyn=s attorney:   She gets ‑ ‑
you get the F‑150 ‑ ‑

Evelyn:                  Yes.

Evelyn=s attorney:   ‑ ‑ the
Crown Vic and the Harley.  He gets the 87 pickup truck; is that correct?

Evelyn:                  Yes.

Evelyn=s attorney:   He gets the big
screen TV; and they are to divide their annuities, if any, 50/50.  If she
defaults 30 days on the payment of that Harley motorcycle payment, Judge, then
Mr. Zavala has the right to repossess that and make those payments.  Each will
take the property in their possession.  Husband had some rings.








She is [sic] agreed to turn those over when she finds them but makes no
representation ‑ ‑ as a matter of fact, you are saying you don=t have them?

Evelyn:                  No, I have
not.

Evelyn=s attorney:   But if you do find
them, you will be glad to turn them over?

Respondent:           Right.

Evelyn=s attorney:   I think that=s it, isn=t it?

Paul=s attorney:      Yes.

Evelyn=s attorney:   Can I ask her ‑
‑

Court:                    Yes.

Evelyn=s attorney:   Ma=am, you heard that stipulation. 
That is your agreement?

Evelyn:                  Yes, sir.

Evelyn=s attorney:   Do you have any
questions about that?

Evelyn:                  No, sir.

Paul=s attorney:      That is your agreement, Mr. Zavala?

Paul:                     Yes,
sir.

The trial court then stated on the
record, AThat agreement is approved by the
Court, and that leaves our issues to the conservatorship [of the children].@  Following the trial court=s  approval of these stipulations,
a jury was selected and trial began on the conservatorship issues.  Evelyn=s attorney cross‑examined
Paul during the trial, on the same day the stipulations were read into the
record.  The following is an excerpt from the trial transcript:  Evelyn=s attorney:   So the jury has a
better idea, the house is going to go to your wife; isn=t that true?

Paul:                     She wants
it, yes.

Evelyn=s attorney:   Mr. Zavala, you
stipulated to that before the jury came in that she would get the house, lock,
stock, and barrel; isn=t that correct?

Paul:                     I don=t recall lock, stock, and barrel. 
I believe ‑ ‑

Evelyn=s attorney:   100 percent?

Paul:                     Other
than me getting my equity out of there, yes.

Evelyn=s attorney:   There wasn=t any mention in the stipulation about
any equity in the house, was there?








Paul:                     I was
under the impression that there was.

Evelyn=s attorney:   You approached the
Bench with your lawyer about two hours ago, at 1:30, and indicated that you had
an agreement for the division of the property; isn=t that correct?

Paul:                     Yes.

Evelyn=s attorney:   And the agreement
that was recited in the record is that the house went to your wife, 100
percent; isn=t that correct?

Paul:                     Well, I
knew she wanted to get ‑ ‑

Evelyn=s attorney:   Nonresponsive, Judge.

Paul:                     I was
misinformed because I thought I was going to get my equity out of the house.

Evelyn=s attorney:   You understand that
the Judge accepted your stipulation?

Paul:                     Yes.

Evelyn=s attorney:   You understand your
lawyer asked you if that was your agreement?

Paul:                     Yes, and
--

Evelyn=s attorney:   And he asked you if
you understood it fully and completely, didn=t he?

Paul:                     Yes,
sir, he did.

On the second day of trial, the jury returned a verdict on
the conservatorship issues, which the trial court accepted.  In due course, the
court rendered its final decree of divorce.  As is pertinent to this appeal,
the decree awarded the marital home to Evelyn and imposed on Evelyn the debt
associated with the home.  The decree makes no direct reference to the equity
in the home.  But, by awarding to Evelyn, and divesting Paul of, Aall right, title,
interest and claim in and to@ the marital real estate and home, the
decree effectively awards  the equity to Evelyn.

Paul moved for a new trial; the motion was overruled by
operation of law and this appeal ensued.[1]








II.  Issue Presented

Paul=s sole issue on appeal is Awhether the
husband=s trial counsel
possessed the requisite authority to compromise the husband=s legal rights by
entering into a stipulation with the wife=s counsel concerning
the division of the marital home . . . .@  

III.  Standard of Review

The trial court=s Adecision whether a
settlement agreement should be enforced as an agreed judgment or must be the
subject of a contract action requiring additional pleadings and proof is
subject to the abuse of discretion standard of review.@  Staley v.
Herblin, 188 S.W.3d 334, 336 (Tex. App.CDallas 2006, pet.
denied) (citing Mantas v. Fifth Court of Appeals, 925 S.W.2d 656, 659
(Tex. 1996)).  Because a trial court has no discretion in determining what the
law is or in applying the law to the facts, a trial court=s failure to
analyze or apply the law correctly is an abuse of discretion.  In re Am.
Homestar of Lancaster, Inc., 50 S.W.3d 480, 483 (Tex. 2001); Appleton v.
Appleton, 76 S.W.3d 78, 86 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).    

IV.  Analysis

Section 7.006 of the Texas Family Code provides:

(a)       To promote amicable
settlement of disputes in a suit for divorce or annulment, the spouses may
enter into a written agreement concerning the division of the property and the
liabilities of the spouses and maintenance of either spouse.  The agreement may
be revised or repudiated before rendition of the divorce or annulment unless
the agreement is binding under another rule of law.








(b)       If
the court finds that the terms of the written agreement in a divorce or
annulment are just and right, those terms are binding on the court.  If the
court approves the agreement, the court may set forth the agreement in full or
incorporate the agreement by reference in the final decree.

Tex. Fam. Code ' 7.006(a) &
(b) (Vernon 2006).  Although the statute references a written agreement, an
oral agreement that is read into the record in open court satisfies the
provision.  McLendon v. McLendon, 847 S.W.2d 601, 606B07 (Tex. App.CDallas 1992, writ
denied). 

On appeal, Paul contends the trial court erred because its
judgment is based on a stipulation that his attorney was not authorized to
make.  As noted, Paul argues in his sole issue that his trial counsel did not
possess the requisite authority to enter into a stipulation with his wife=s counsel
concerning the division of the equity in the marital home.[2] 


Paul faces two problems.  First, he did not apprise the
trial court of any claim that his counsel had acted beyond the bounds of his
authority.  Although he became aware during cross-examination that the pretrial
stipulation was being construed as addressing the division of equity in the
marital home, Paul raised no issue during the three month period between trial
and rendition of judgment regarding his attorney=s purported lack
of authority to agree to any such division.  Further, even in his motion for
new trial in which he was represented by new counsel, Paul did not complain
that his original attorney lacked authority to enter into the stipulation on
which the trial court based its award to Evelyn of equity in the marital home. 
By failing to alert the trial court to the contention that his attorney was not
authorized to make a stipulation concerning the division of equity, Paul has
waived that argument for purposes of appeal. See Tex. R. App. P. 33.1(a).








Second, Paul personally consented to the
stipulation on the record.  Paul discounts his action by claiming he did not
hear the portion of the stipulation concerning the marital home, but the record
shows Paul was present when the attorneys approached the bench to make
preliminary stipulations.  During the stipulations, Paul and Evelyn were called
to the bench to clarify Evelyn=s attorney=s understanding of
the disposition of certain motor vehicles.  Evelyn=s attorney
continued to recite the stipulations for the record, and ultimately each party
to the divorce was asked if he or she agreed to the stated stipulations.  Paul
answered affirmatively, without qualification or question.

In Paul=s motion for new trial and in his
appellate briefing, we
glean an argument that his cross-examination testimony constitutes revocation
of consent to the stipulation as it concerns equity in the marital home.  An
agreed judgment may not be entered where consent to the agreement has been
revoked or withdrawn.  Quintero v. Jim Walter Homes, Inc., 654 S.W.2d
442, 444 (Tex. 1983); Burnaman v. Heaton, 150 Tex. 333, 240 S.W.2d 288,
291 (1951); Farr v. McKinzie, 477 S.W.2d 672, 676 (Tex. Civ. App.BHouston [14th
Dist.] 1972, writ ref=d n.r.e.).  But if such revocation or
withdrawal of consent is not effectively communicated to the court, a judgment
entered in accordance with the agreement will stand.  See First Heights
Bank, FSB v. Marom, 934 S.W.2d 843, 845 (Tex. App.CHouston [14th
Dist.] 1996, no writ); see also Trevathan v. Akins, 712 S.W.2d 559, 560
(Tex. App.CHouston [1st Dist.] 1986, no writ) (AWhen a trial court
has knowledge that one of the parties does not consent to a judgment,
the trial court should refuse to . . . make it the judgment of the court.@) (emphasis
added); Sohocki v. Sohocki, 897 S.W.2d 422, 424 (Tex. App.CCorpus Christi
1995, no writ) (AThe proper inquiry is whether the information in the trial
court=s possession is clearly sufficient
and of such a nature as to put the court on notice that a party=s consent is lacking and to require
the court to make further inquiry before rendering judgment.@).   








Viewed in context, Paul=s
cross-examination testimony does not constitute effective revocation of
consent.  At most, Paul=s testimony suggests that he had not
considered division of the equity or did not perceive that an agreement had
been reached as to the equity.  At the same time, however, Paul confirmed his
earlier agreement to the stipulation that awarded the home to Evelyn A100 percent,
subject to the debt.@  While Paul=s confirmation of
his agreement to the stipulation may have been the product of leading questions
posed by Evelyn=s attorney, Paul made no effort in his
re-direct or rebuttal testimony to re-urge an objection to division of the
equity.  Furthermore, between the date of trial and the trial court=s rendition of
judgment, Paul filed no pleadings or documents affirmatively revoking consent
to the stipulation or to the division of equity pursuant to that stipulation.  See,
e.g., Sone v. Bartley, 608 S.W.2d 240, 242 (Tex. App.CSan Antonio 1980,
no writ) (court erred in rendering agreed judgment when plaintiff had filed
letters objecting to the purported settlement agreement, paid jury fee, and
requested case be set for trial on jury docket).  Under these circumstances, we
cannot say the trial court abused its discretion by entering judgment based on
the stipulation.  See Dodson v. Seymour, 664 S.W.2d 158, 161 (Tex. App.CSan Antonio 1983,
no writ).

CONCLUSION

For the reasons set forth above, we affirm the trial court=s judgment.

 

 

____________________________Eva M.
Guzman

Justice

 

Judgment rendered and Memorandum
Opinion filed May 31, 2007.

Panel consists of Justices Frost,
Seymore, and Guzman.









[1]  In a reply point, Evelyn asserts that this appeal should be dismissed
because Paul=s acceptance of benefits under the
trial court=s judgment estops him from seeking
reversal of that judgment.  See Carle v. Carle, 149 Tex. 469, 472, 234
S.W.2d 1002, 1004 (1950) (AA litigant cannot treat a judgment as both right and wrong, and if he
has voluntarily accepted the benefits of a judgment, he cannot afterward
prosecute an appeal therefrom.@).  While we acknowledge the rule pronounced in Carle and its
progeny, we have not been presented with relevant facts demonstrating Paul=s voluntary acceptance of benefits
of the judgment.  See Rogers v. Rogers, 806 S.W.2d 886, 889B90 (Tex. App.BCorpus Christi 1991, no writ) (no
basis for dismissal of appeal where appellee failed to file motion with
supporting affidavits showing appellant=s acceptance of specific benefits under judgment); Miller
v. Miller, 569 S.W.2d 592, 593 (Tex. Civ. App.BSan Antonio 1978, no writ) (denying
motion to dismiss appeal where record contained no evidence of acceptance of
any benefits under the judgment). Therefore, we deny Evelyn=s request for dismissal of this
appeal.  





[2]  Paul does not allege that his consent to the
stipulation was procured by fraud.  Cf. Salinas v. Beaudrie, 960 S.W.2d
314, 320 (Tex. App.CCorpus Christi 1997, no pet.) (where party=s false representations induce another party to
contract, second party=s failure to read contract will not bar equitable
relief of enforcement against fraudulent party).